Filed 3/4/22  P. v. Vallejo CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074099 |
| v. | (Super.Ct.No. RIF103887) |
| FRANCISCO JAVIER VALLEJO et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  David A. Gunn, Judge.
Reversed.

Benjamin Kington, under appointment by the Court of Appeal for Defendant and Appellant Francisco Vallejo.

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant Salomon Vallejo.

1

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief

Assistant Attorney General, Charles C. Ragland, Acting Senior Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Lynne

McGinnis and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

In 2003, defendants Francisco and Salomon Vallejo were convicted of two counts

of attempted murder (Pen. Code, §§ 664 & 187, subd. (a))[1] with premeditation, and one

count of discharging a firearm from a vehicle (§ 12034, subd. (c)), in addition to true

findings on allegations that the crimes were committed for the benefit of a street gang

(§ 186.22, subd. (b)), various gun discharge enhancements (§ 12022.53, subds. (c), (d), &

(e)(1)) and a hate crime enhancement (§ 422.75, subd. (c)). They were each sentenced to

an aggregate term of 50 years to life, and their convictions were affirmed on direct

appeal. In 2019, following enactment of section 1170.95 pursuant to passage of Senate

Bill No. 1437, each defendant filed a petition seeking resentencing. Both petitions were

dismissed on eligibility grounds, and both defendants appealed.

On appeal, defendants challenged the trial court's determination that section

1170.95 applied only to murder convictions and that the exclusion of attempted murder

from applicability of section 1170.95 violates equal protection principles. We affirmed at

that time based on the language of the statute at that time. Defendants filed petitions for

review, which were granted and held, but while the case was pending review in the

California Supreme Court, the Legislature passed Senate Bill No. 775, amending the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

provisions of section 1170.95 to make it applicable to persons convicted of attempted murder and manslaughter. As a result of that amendment, the Supreme Court retransferred the case to this court with directions to vacate our opinion and reconsider the matter in light of Senate Bill No. 775. We now reverse.

## BACKGROUND

We summarize the facts of the incidents that led to the charges of which the two defendants were convicted from a portion of our prior opinion in the direct appeal.[2] (*People v. Vallejo et al.* (June 13, 2005, E034555) [nonpub. opn.], pp. 4-9.)

"A. Events Preceding the Charged Crimes

"The parties stipulated that at 4:20 p.m. on May 22, 2002, five gunshots were fired at the intersection of Ottawa and Enterprise in the City of Riverside. A witness saw a red older model small vehicle with a spoiler on the trunk chasing a Ford Explorer. A Hispanic male appearing to be in his 20's with a thin build was driving the red vehicle. An African-American male was driving the Explorer. Five 9-millimeter shell casings were found at the scene.

"At approximately 3:40 a.m. on May 26, 2002, 21-year-old Antwone Shaw was in his car delivering newspapers at Ottawa and Fourteenth Streets when he noticed an older black Acura Integra travel past him. Shaw spotted the Acura a second time on Ohio Street, located one block from Enterprise. As Shaw continued his route, he stopped at a stop sign at the intersection of Illinois and Ottawa. There, he saw the Acura a third time.

_____

[2] We omit additional facts in the interest of brevity.

3

The car was occupied by three individuals; the driver was a thin Hispanic male. The driver made a U-turn and pulled behind Shaw's car. Several gunshots rang out. One bullet penetrated Shaw's car and entered and exited Shaw's left calf.

"Ten 9-millimeter shell casings and one .45-caliber shell casing were found at the scene. The Acura was registered to Francisco, who was in county jail from May 24 to 29, 2002.

"At approximately 9:00 or 10:00 p.m. on May 30, 2002, a carload of individuals belonging to an African-American-based criminal street gang known as the 1200 Blocc Crips attempted to shoot a Hispanic male. Instead, they shot a four or five-year-old boy.

"At approximately 6:42 a.m. on May 31, 2002, a police officer was dispatched to the home of Lidia Vallejo, the mother of defendants Francisco and Salomon. Mrs. Vallejo reported that at approximately 1:00 a.m. she heard several gunshots, and then noticed that Francisco's black Acura Integra had been "shot up." There were four bullet holes on the passenger side of the Acura and one bullet hole through the front windshield. Mrs. Vallejo said that Francisco and Salomon were members of East Side Riva (ESR), a criminal street gang, and that she had not seen either of them for approximately three days.

"B. The Attempted Murder of Jason Green (Count 1)

"At approximately 8:00 a.m. on May 31, 2002, Jason Green, an African-American, was walking along Franklin Street in Riverside, headed to his uncle's house. Green was a former associate of the 1200 Blocc Crips but had never been a member of

4

the gang. As Green walked past the intersection of Third and Franklin, he saw a red Nissan pickup truck, occupied by three Hispanic males, approaching from the opposite direction on Franklin Street.

"The Nissan pulled into a driveway directly across the street from Green's uncle's house. Two of the men got out of the Nissan from its passenger side, and walked across the street toward Green. The driver of the Nissan started backing it out of the driveway toward the middle of the street. When the two men reached the middle of the street and were approximately 10 to 15 feet from Green, one of the men said, "Fuck niggers" and "Fuck 1200 Blocc." Green continued to walk toward his uncle's house. The other man drew a .25-caliber handgun from his right pants pocket and fired five shots at Green. The third bullet grazed the side of Green's head. The rest of the bullets missed him.

"Green ran to his uncle's house and called 911. The two men got back in the Nissan, and the driver of the Nissan drove it down Franklin and turned onto Third toward Interstate 91. Police officers arrived at Green's uncle's house approximately three minutes after the shooting. Green was taken to a hospital and was released after three to four hours.

"During the afternoon of May 31, officers transported Green to two separate infield showups, where he identified Sanchez as the man who shot at him and Francisco as the man who uttered the racial slurs. Green was then taken to a third location, where he identified a red Nissan truck, registered to Francisco, as the vehicle involved in the shooting. Salomon was not present at either infield showup.

5

"At trial in August 2003, approximately 16 months after the shooting, Green again identified Sanchez as the man who shot him, but identified Salomon, not Francisco, as the man who uttered the racial slurs. On the day of the shooting, Green told an officer that he did not get a good look at the driver. At trial, Green testified that Francisco was the driver but said he was not certain.

"One witness testified that he saw 'the driver' and another man get in the Nissan after the shooting. He described the driver as six feet two inches tall, heavyset, and weighing 200 pounds. He did not get a good look at the second man. Francisco is five feet eight inches tall and weighed 220 pounds at the time of the shooting. Salomon is five feet seven inches tall and weighed 150 pounds at the time of the shooting. Sanchez is five feet ten inches tall and weighed 140 pounds at the time of trial.

"C. The Attempted Murder of an Unidentified African-American Male (Counts 2 and 3)

"Less than one hour after the Green shooting, at approximately 8:45 a.m. on May 31, 2002, witnesses saw a red Nissan truck occupied by three Hispanic males approach the intersection of Iowa and Blaine in the City of Riverside. Third Street turns into Blaine. While the driver of the Nissan drove at a slow rate of speed, an individual in the passenger seat reached out of the truck and, holding a nine-millimeter gun in his right hand, fired six shots at an unidentified African-American teenager walking in the crosswalk of Blaine. The Nissan then sped away.

6

"Witnesses were unable to provide descriptions of the shooter or the other two Hispanic males in the Nissan. However, one witness said the shooter did not have any tattoos on his right arm. Another witness wrote down part of the Nissan's license plate number and gave it to police. On the day of the shooting and at trial, this witness identified Francisco's Nissan as the vehicle used in the shooting."

## DISCUSSION

Defendants argued on direct appeal that section 1170.95, enacted pursuant to Senate Bill No. 1437, applies to attempted murder convictions, and that if it does not, their rights to equal protection under the law have been violated. Following our affirmance and while review was pending, section 1170.95 was amended pursuant to Senate Bill No. 775. The Supreme Court retransferred the case to this court, directed us to vacate our prior opinion and to reconsider it in light of Senate Bill No. 775, which we did, inviting the parties to submit supplemental briefing on the issue. The parties have now submitted supplemental briefs. The People urge us to affirm our prior ruling on the ground the record on appeal demonstrates the two defendants acted with malice aforethought.[3] {Supp. RB 6} Because the trial court never reviewed the merits of the

---

[3] The People requested that we take judicial notice of our court records and the record on appeal in the direct appeal in *People v. Vallejo et al* (June 13, 2005, E034555)[nonpub. opn.]. We take judicial notice of our opinion from the direct appeal, but, because defendants are entitled to a new hearing on their resentencing petitions at which the trial court may consider the record on appeal to make the appropriate determinations, judicial notice of the record on appeal is unnecessary. We therefore deny the request as to the record on appeal in case No. E034555.

7

defendants' petitions, we decline to make such a determination in the first instance on appeal and remand the matter to the trial court to reconsider the petitions.

1.  *Pursuant to Senate Bill No. 775, the Provisions of Section 1170.95 Apply to Attempted Murder Convictions, Requiring Remand.*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) added section 1170.95, setting forth the procedure by which a "person convicted of felony murder or murder under a natural and probable consequences theory . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).) Prior to the enactment of Senate Bill No. 775, the Courts of Appeal were split on whether Senate Bill No. 1437 applied to attempted murder. Senate Bill No. 775 resolved this split of authority by amending Senate Bill No. 1437 to explicitly afford relief to persons convicted of attempted murder and manslaughter. Senate Bill No. 775's amendments to section 1170.95 became effective January 1, 2022.

On October 5, 2021, the Governor signed into law Senate Bill No. 775 (2017– 2018 Reg. Sess.), which expands eligibility for relief pursuant to section 1170.95 to include individuals convicted of "attempted murder under the natural and probable consequences doctrine." (Legis. Counsel's Dig., Sen. Bill No. 775 (2020–2021 Reg. Sess.).) The effective date of nonurgency legislation such as Senate Bill No. 775, passed during the regular legislative session in 2021, is January 1, 2022. (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1006.)

8

In the present case, the defendants were convicted of two counts of attempted murder based on two shootings. (*People v. Vallejo et al.* (June 13, 2005, E034555) [nonpub. opn.], pp. 4-11.) Their convictions were reviewed for the sufficiency of the evidence, and, in our opinion from the direct appeal, we affirmed the convictions for attempted murder based on aider and abettor principles presented to the jury. (*Id.* at pp. 20-22.) At the hearing on the postconviction petitions for resentencing, the trial court addressed only the question of whether defendants were eligible for relief having been convicted of attempted murder, and never reached the question of whether the record supported the existence of express malice on the part of the two brothers, who were assumed to be non-shooters in the attempted murders. Our review was limited to that eligibility question, so the matter must be reconsidered by the trial court respecting the issue of whether an order to show cause should issue and whether the defendants are entitled to resentencing. (§ 1170.95, subds. (c), (d).)

The People argue that remand is unnecessary because the jury necessarily determined that the defendants acted with express malice. {Supp. RB 6} However, in the lower court, the trial court considering the defendants' section 1170.95 motion never reached the merits of that question, dismissing the petition on the ground that convictions for attempted murder were ineligible for resentencing relief. Because the trial court never considered the merits of the petitions, and because we are not finders of fact, our review is necessarily limited.

9

Further, our original opinion on direct appeal makes it apparent the brothers' convictions were grounded on direct aider-abettor principles, which has not been subjected to scrutiny in light of the legislative amendments to sections 188 and 189. While the People argue the defendants were not convicted of felony murder or under the natural and probable consequences theory, our opinion in the direct appeal reveals their cases were tried on theories of aiding and abetting the actual shooter, which we affirmed despite challenges to the instructions on the mental state for aiding and abetting. (*People v. Vallejo et al.* (June 13, 2005, E034555)[nonpub. opn.], pp. 21-27.)

The defendants are entitled to reconsideration of their sentences in light of recent legislative and decisional developments. The merits of their petitions have not been reviewed by the trial court, a necessary predicate to our review of its decision. In light of the amendments, we will remand the matter to the trial court for further proceedings pursuant to section 1170.95. At the hearing, the court may determine if an order to show cause should issue pursuant to subdivision (c), and, if so, the parties may introduce additional evidence as contemplated by subdivision (d) of section 1170.95.

## DISPOSITION

The judgment is reversed and the matter is remanded to the superior court to conduct a new hearing on the defendants' respective petitions for resentencing relief pursuant to section 1170.95.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

CODRINGTON
J.

SLOUGH
J.

11